UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALICE WHITE, et al., | ) | 1:05-cv-1558 OWW GSA |
| | ) | |
| Plaintiffs, | ) | PRETRIAL ORDER |
| | ) | |
| v. | ) | Motion in Limine Date: |
| | ) | 4/18/08 12:15 Ctrm. 3 |
| CITY OF FRESNO, FRESNO POLICE | ) | |
| DEPARTMENT, et al., | ) | Trial Date: 4/22/08 9:00 |
| | ) | Ctrm. 3 (JT-4 days) |
| Defendants. | ) | |
| _____ | ) | |

## I.   JURISDICTION AND VENUE

1.   This is a police misconduct action filed pursuant to 42 U.S.C. § 1983.  Accordingly, jurisdiction exists pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights).  The acts alleged occurred in the County of Fresno, California.  Accordingly, venue lies in the Eastern District of California, the judicial district in which the claim arose, pursuant to 28 U.S.C. § 1391(b).  There is no dispute between the parties concerning jurisdiction or venue.

## II.   JURY/NON-JURY

1.   Both parties have demanded a jury trial.

///
///

1

III.   FACTS

A.   Undisputed Facts

1.   In addition to the facts found by the court to be undisputed on November 9, 2007, the following facts are undisputed.

2.   Plaintiff Alice White brings this action on her own behalf.

3.   On March 16, 2004, Alice White was arrested by Defendant Michael Manfredi.

4.   On March 16, 2004, Defendant Michael Manfredi was a sworn peace officer employed by the City of Fresno Police Department.

5.   There was probable cause for the arrest of Derrick White for the armed robbery of the subject Arco Station.

6.   On March 15-16, 2004, Derrick White was on parole related to a prior felony conviction for armed robbery.

7.   A parole search was conducted of the apartment occupied by Derrick White and his wife, Alice White, on March 16, 2004.

B.   Disputed Facts

1.   Whether Defendants' alleged misconduct violated the Plaintiff's constitutional rights.

2.   The nature and extent of Plaintiff's injuries and damages, if any.

3.   Whether Defendants used excessive force in dealing with Alice White.

4.   Whether Defendants' alleged misconduct in arresting, incarcerating and proceeding in court against Plaintiff, violated her constitutional rights.

2

1    5.   The nature and extent of Plaintiff's injuries and
2    damages, if any.

3

4                IV.   DISPUTED EVIDENTIARY ISSUES

5        1.   Defendants anticipate that their pretrial motions in
6    limine will include, but will not be limited to, the following:

7            a.   To preclude evidence regarding Defendants'
8    insurance.

9            b.   To preclude evidence concerning opinions of
10   experts not properly designated by Plaintiff.

11           c.   To preclude evidence that is protected by the
12   Official Information Privilege, Penal Code § 832.7, Penal Code
13   § 832.8, Evidence Code § 1040, Evidence Code § 1043, and the
14   right to privacy.

15           d.   To preclude Plaintiff from referring to arrests or
16   conduct by any Defendant which may have occurred before or after
17   the March 16, 2004, date of the subject incident.

18           e.   To preclude evidence that charges against Ms.
19   White were dismissed by the Fresno County District Attorney.

20           f.   To preclude the use of documents or witnesses not
21   previously disclosed to Defendants during discovery or in a Rule
22   26 Initial Disclosure.

23       2.   Plaintiff anticipates the following pre-trial motions:

24           a.   Plaintiffs intends to offer witnesses and/or
25   evidence not previously disclosed.

26           b.   Plaintiff intends to move to allow evidence of
27   arrest or conduct by Defendants which may have occurred before or
28   after the March 16, 2004, date of the subject incident.

                                3

1    c.    Plaintiff intends to offer evidence that the

2 charges were dismissed and the reason for the dismissal.

3    d.    Plaintiff intends to move to allow all records of

4 the Fresno Police Department concerning records of statements and

5 opinions including, but not limited to findings, letters, formal

6 reports, and oral conversations made by superior officers and

7 fellow officers, of the above-named police officer(s), which

8 pertain to acts indicating or constituting racial prejudice,

9 dishonesty, false arrest, illegal search and seizure, the

10 fabrication of charges and/or evidence, or any act demonstrating

11 a morally lax character.  California Constitution, Article I,

12 section 28(d); *Pierre C. v. Superior Court, supra; Cadena v.*

13 *Superior Court, supra; Hinojosa v. Superior Court, supra;*

14 *Arcelona v. Municipal Court, supra; People v. Wheeler, supra;*

15 *People v. Mickle, supra; People v. Harris, supra; In re Ferguson,*

16 *supra; People v. Taylor, supra*.

17    V.    SPECIAL FACTUAL INFORMATION

18 A.    Plaintiffs.

19    1.    Michael Manfredi fabricated the police report by making

20 a crime scene, trying to make evidence and not finding anything

21 pertaining to a robbery.  Michael Manfredi told Plaintiff if she

22 told him what he wanted to know, she would not be arrested and

23 when Plaintiff refused, Michael Manfredi called Plaintiff a

24 "black bitch."

25    2.    Michael Manfredi asked if he could search Plaintiff's

26 purse, she said no, not without a warrant.  Michael Manfredi

27 opened Plaintiff's zipped purse and took a gun, magazines and

28 money and put it with the money found on Derrick White.  Michael

**4**

1 Manfredi arrested Plaintiff.

2    3.   No other officer talked with Mrs. White except for

3 Officer Arellanes, who was concerned about the cost of rent for

4 Mrs. White's apartment.  Also, Harrell at F.P.D.

5    4.   "On March 15, 2004, around 11:00 p.m., I awakened my

6 husband, Derrick White, to watch something on the news.  Around

7 about 11:30 p.m. I asked him to go get me something to eat.  He

8 said okay and got dressed.  I laid and watched TV for a little

9 while, then I got up and took a shower.  As I was getting out of

10 the shower, I heard a lot of screaming and yelling.  I went to

11 the window in the next room and looked out to see what was

12 happening.  I saw a lot of police officers in police uniforms and

13 plains with police cars and trucks all around.  I saw they had my

14 husband down with guns pointed on him.  I threw some clothes on

15 and run down stairs.  I ran out the back patio door and asked

16 what's going on.  I was pushed back into the house by an officer

17 and I believe his name was Officer Dooms.  He started yelling

18 this is a parole search.  I said a parole search for what.  I

19 said do not touch no ones belongings except Derrick because no

20 one else is on parole in here.  The officer ran up the stairs I

21 was attempting to go up the stairs behind him when Sgt. Michael

22 Manfredi grabbed my arm and threw mo on the coach.  He said black

23 bitch don't move.  I said I am not on parole I can go anywhere in

24 my house.  He told me I better not move.  I was a prisoner in my

25 own home.  He started looking around the apartment asking me how

26 can I afford my TV, and my furniture.  And then he said with a

27 211.  I asked what is that he said robbery money.  I said I work

28 I have a nine to five just like you.  He asked me if Derrick was

1   my husband I said yes.  He asked did I know he was on parole.
2   And I said you are doing a parole search aren't you.  He asked me
3   where was Derrick at 8:00 p.m.  I said at home.  He told me I was
4   a lying, an officer saw Derrick driving his truck.  I said
5   Derrick don't have a truck that's my truck.  I told him Derrick
6   left the house about 12 or after to go get something to eat.  He
7   told me I was lying again.  He went upstairs.  About 20 minutes
8   later he came back down with my purse.  He asked whose purse is
9   this I said mine.  He asked could he look in it.  I said no you
10  don't have a warrant.  He went back upstairs with it.  He came
11  back down the stairs and asked me again did I know Derrick was on
12  parole.  I said again aren't you making a parole search.  He said
13  you have a gun in your purse and who does it belong to.  I asked
14  him why did you go in my zipped purse after I told you not to go
15  in it because you didn't have a warrant.  Then he said you are
16  under an arrest.  I said why I didn't do anything.  He said for
17  giving a felon a gun.  I told him he does not know the gun is in
18  my purse.  He does not know anything about a gun.  He had me
19  handcuffed and would not allow me to put on any shoes or put on
20  appropriate clothes.  He took me outside and told me he was
21  taking my truck and it would be a long time before I get back and
22  also that he was going to make sure that I go down.  Sgt.
23  Manfredi lied when he said I provided false information to him.
24  I told him the truth his officer even brought the food in the
25  house.  And when he said I was delaying the investigation again
26  he lied.  My husband was never allowed in the house.  He lied
27  about PC 148(a)(1) (Resisting/Obstructing/Delaying Police in
28  Their Investigation).  I never moved."

**6**

**B.** **Defendants**

    **1.**    **This lawsuit arises out of an investigation into an armed robbery and subsequent arrest of Alice White and Derrick White, her husband, on March 16, 2004, by Sgt. Michael Manfredi for violation of California Penal Code § 148 (resisting, obstructing and delaying officer in performance of his duties.)**

    **2.**    **At 8:19 p.m. on Monday, March 15, 2004, Officer Rendon and his partner, Officer Paley, were dispatched to an Arco Gas Station and Mini Mart located at 4210 E. Butler regarding an armed robbery.  Prior to their arrival, District Crime Suppression Team Officers Peterka and Lopez broadcast the suspect's description and asked all officers to be on the lookout for the robbery suspect.**

    **3.**    **Follow-up investigation and witness statements identified Plaintiff's husband, Derrick White, as a possible suspect.  Two eyewitnesses provided a license number and a description of the vehicle and its sole occupant, a black adult male who appeared to be wearing dark clothing and may have had a slight mustache.  After running the license plate number which was provided, the officers learned that there was only one plate with a sequence that matched to a Ford vehicle with an address of 194 N. Willow, Apartment #113.  Sergeant Curtis Chastain began surveillance of the apartment at approximately 8:45 p.m. and the Ford Explorer was not seen at the apartment complex. Surveillance was continued by Officer Pete Marez.**

    **4.**    **At 10:30 p.m., Sergeant Chastain walked through the entire complex and did not see the Ford Explorer.  At approximately 1:20 a.m. on March 16, 2004, Officer Desmond**

**7**

1   observed the suspect vehicle driving southbound on Willow, enter

2   the parking lot and pull into a covered marked stall behind

3   Apartment 113.

4        5.   Derrick White exited the vehicle and was eventually

5   arrested for armed robbery of the Arco Station.  A search of his

6   residence found a compact Glock, Model 27, .40 caliber handgun in

7   Mrs. White's zipped purse, similar to the one identified in the

8   robbery, two loaded magazines, gloves, a black beanie, a black

9   leather jacket and additional currency.  Another loaded magazine

10  was found in the utility room in a tennis shoe belonging to Mr.

11  White.

12       6.   Mrs. White advised Sergeant Manfredi that the handgun

13  belonged to her.  She also stated that Derrick White was home

14  during the hours of 7:00 p.m. and 11:00 p.m. and had only

15  recently left the residence.  Sgt. Manfredi decided to take Mrs.

16  White into custody for providing the weapon to Derrick White,

17  providing false information to officers and delaying the

18  investigation.  Both Plaintiffs were transported to police

19  headquarters for booking.  While in the holding cells in the

20  Identification Bureau, Sgt. Manfredi heard Derrick White tell

21  Alice White that he had been home between the hours of 7:00 p.m.

22  and 11:00 p.m. and that he had been watching Steven Segal films.

23  Based on this conversation and his experience, he concluded that

24  Plaintiffs were trying to get their alibi straight.

25                    VI.  RELIEF SOUGHT

26       1.   Plaintiff seeks compensatory and exemplary damages

27  against Defendants, attorney's fees for the § 1983 cause of

28  action, and costs.  Plaintiff also seeks more education for the

1  Fresno Police Department.  Plaintiff acknowledges that she is not
2  an attorney and is not entitled to attorney's fees.

3      2.    Defendants seek a defense verdict, costs of suit and
4  attorney's fees incurred in defense of the action.

5                    VII.  DISPUTED ISSUES OF LAW

6  A.    Plaintiffs

7      1.    Plaintiff incorporates the legal argument contained in
8  the Court's ruling on Defendants' Motion for Summary Judgment at
9  page 62:14-66:26.

10     2.    Plaintiff seeks a recovery for violation of her civil
11 rights for alleged false arrest and imprisonment.

12     3.    Pursuant to California Penal Code § 836(a), a police
13 officer may make an arrest:  (1) whenever he has probable cause
14 to believe that the person to be arrested has committed a public
15 offense in his presence; (2) the person arrested has committed a
16 felony, although not in the officer's presence; (3) the officer
17 has probable cause to believe that the person to be arrested has
18 committed a felony, whether or not the felony, in fact, had been
19 committed.

20 B.    Defendants

21     1.    Defendants submit the following points of law:

22     2.    Liability against the individual Defendants is sought
23 based upon claims of arrest without probable cause in violation
24 of the Fourth Amendment under the Federal Civil Rights Act and
25 negligence under State law.

26     3.    In order for a seizure to constitute a Fourth Amendment
27 violation, it must be unreasonable.  *See, Gallegos v. City of Los
28 Angeles*, 308 F.3d 987 (9th Cir. 2002).  Arrests and detentions

based on probable cause do not provide a ground for recovery under 42 U.S.C. § 1983. *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990). The reasonableness of a warrantless arrest is determined by the existence of probable cause. "Probable cause" for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe "that the suspect has committed, is committing, or is about to commit an offense." *Barry v. Fowler, supra*, 773, citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); see also, *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

    4.   Probable cause requires more than mere suspicion, but does not require convincing proof. Indeed, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Probable cause "is a fluid concept-turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Simply stated, the legal standard for probable cause requires that an arrest be objectively reasonable under the totality of the circumstances. *Id.* at 230.

    5.   Alice White was arrested for violation of PC § 12072(a)(1) (Providing a Firearm to a Felon) and PC § 148(a)(1) (Resisting/Obstructing/Delaying Police in Their Investigation). Penal Code § 12072 states that "no person . . . shall knowingly supply, deliver, sell, or give permission or control of a firearm to any person within any of the classes prohibited by § 12021 or

10

12021.1."  In this instant case, Alice White admitted to the
officers that Derrick White lived at 194 N. Willow, Apt. 113,
with her.  She further admitted that she knew Derrick White had
been in prison and was a felon.  When asked by officers, Mrs.
White stated she knew felons were banned from having weapons.
Notwithstanding, officers found a handgun in the bedroom
containing Derrick White's clothing and mail.  In addition, a
magazine containing live ammunition for the same type of handgun
found in Mr. White's residence was found in a size nine shoe
above the washing machine.  These facts gave officers reasonable
suspicion to believe Mr. White had access to this firearm and
ammunition.  Based on their reasonable suspicion and the evidence
found in the residence, officers had probable cause to arrest
Mrs. White for violation of PC § 12072.

6.   Next, Penal Code § 148(a)(1) states: "Every person who
willfully resists, delays, or obstructs any public officer, peace
officer . . . in the discharge or attempt to discharge any duty
of his or her office, shall be punished by a fine not exceeding .
. . or by imprisonment . . . or by both that fine and
imprisonment."  In addition to providing a firearm to a felon,
Mrs. White attempted to obstruct and delay the officers'
investigation.  Without even being asked, Mrs. White told the
officers that Mr. White had been in the residence with her from
the hours of 8:00 through 11:00.  However, the officers knew this
to be untrue.  The officers had been conducting surveillance of
the apartment complex at 194 N. Willow for several hours that
evening and had not seen any signs of Mr. White until he arrived
around 1:00 a.m.

1        7.   Mrs. White further obstructed officers' investigation
2  by claiming Derrick White did not know about the handgun and he
3  did not stay in her bedroom where the handgun was found.
4  However, officers found men's clothing, in Mr. White's size, and
5  mail addressed to Derrick White in that particular bedroom.  Mrs.
6  White also told the officers that Derrick White did not have
7  access to her purse, where the gun was found, and she did not
8  allow Mr. White to use the handgun.  When officers asked Mrs.
9  White to describe the handgun, she was only able to say it was a
10 Glock.  Mrs. White was not truthful or forthcoming with the
11 officers during their investigation, therefore delaying and
12 obstructing their investigation.

13                   VIII.   ABANDONED ISSUES
14        1.   None.

15                       IX.   WITNESSES
16 A.   Plaintiffs
17        1.   Derrick White
18        2.   Dave Shavon
19        3.   Chandra Solis
             Fresno Police Department
20
21        4.   Kenneth Hawks
22        5.   Bunny Johnson
23        6.   Mori Ward
24        7.   Fresno Police Department dispatcher for 911 on March
             15, 2004
25        8.   Mr. Delgado
26        9.   Any and all witnesses identified by any other party.
27 B.   Defendants
28        1.   Sgt. Chastain, Badge No. S121

                            12

<pre>
1    2.   Sgt. Michael Manfredi, Badge No. S92

2    3.   Officer Roland Rendon, Badge No. 1110
          Fresno Police Department
3
     4.   R. Harrell, Badge No. 476
4         Fresno Police Department

5    5.   M. Paley, Badge No. 1002
          Fresno Police Department
6
     6.   Officer Russian, Badge No. 762
7         Fresno Police Department

8    7.   Officer Dooms, Badge No. ___
          Fresno Police Department
9
     8.   Officer Desmond, Badge No. ____
10        Fresno Police Department

11   9.   Officer Ron Flores, Badge No. 957
          Fresno Police Department
12
     10.  Officer Lopez, Badge No. 924
13        Fresno Police Department

14   11.  Plaintiff Alice White

15   12.  A.J. Smith
             c/o Fresno County District Attorney
16
</pre>

Counsel are each ordered to submit a list of witnesses to the court along with a copy for use by the Courtroom Deputy Clerk, on the same date and at the same time as the list of exhibits are to be submitted as ordered below.

**CAUTION**

Counsel are cautioned that expert witnesses, including percipient experts, must be designated as such.  No witness, not identified as a witness in this order, including "rebuttal" witnesses, will be sworn or permitted to testify at trial.

## X.   EXHIBITS, SCHEDULES AND SUMMARIES

The following is a list of documents or other exhibits that the parties expect to offer at trial.

13

1      <u>CAUTION</u>

2      Only exhibits so listed will be permitted to be offered into

3 evidence at trial, except as may be otherwise provided in this

4 order.  No exhibit not designated in this pretrial order shall be

5 marked for identification or admitted into evidence at trial.

6 A.   <u>Plaintiff's Exhibits</u>

7      1.   Copies of records relating to complaints against

8 Michael Manfredi.

9      2.   Newspaper clippings.

10      3.   Photographs taken by Fresno Police Department on March

11 16, 2004.

12      4.   Videotape from Arco gas station.

13      5.   All dispatch tapes for March 15 or 16, 2004.

14 B.   <u>Defendant's Exhibits</u>

15      1.   Copies of crime reports related to armed robbery

16 investigation and Fresno County Law Enforcement Warrantless

17 Arrest Declaration and Order.

18                   XI.   DISCOVERY DOCUMENTS

19      Only specifically designated discovery requests and

20 responses will be admitted into evidence.  Any deposition

21 testimony shall be designated by page and line and such

22 designations filed with the Court on or before April 11, 2008.

23 The opposing party shall counter-designate by line and page from

24 the same deposition and shall file written objections to any

25 question and answer designated by the opposing party and filed

26 with the court on or before April 18, 2008.

27      Written discovery shall be identified by number of the

28 request.  The proponent shall lodge the original discovery

                              14

request and verified response with the courtroom deputy one day prior to trial.  The discovery request and response may either be read into evidence, or typed separately, marked as an exhibit, as part of the exhibit marking process, and offered into evidence.

A.   Plaintiff's List

    1.   Original Preliminary Hearing transcript filed March 14, 2005.

    2.   All clothes, hats, photographs and evidence taken from Plaintiff's home.

    3.   All police reports.

B.   Defendant's List

    1.   Depositions of Alice White and Derrick White.

XII.   STIPULATIONS

    1.   None anticipated.

XIII.   AMENDMENTS - DISMISSALS

    1.   None.

XIV.   FURTHER TRIAL PREPARATION

A.   Trial Briefs.

    Counsel are directed to file a trial brief in this matter ten days prior to the date of commencement of trial, as provided by Local Rule 285, Local Rules of Practice for the Eastern District of California.  No extended preliminary statement of facts is required.  The brief should address disputed issues of substantive law, disputed evidentiary issues of law that will not be resolved in limine, and any other areas of dispute that will require resolution by reference to legal authority.

B.   Duty of Counsel To Pre-Mark Exhibits.

    1.   Counsel for the parties are ordered to meet and conduct

15

a joint exhibit conference on April 2, 2008, at 1:00 p.m. at the law offices of Weakley, Ratliff, Arendt & McGuire, LLP, 1630 East Shaw Avenue, Suite 176, Fresno, California, for purposes of pre-marking and examining each other's exhibits and preparing an exhibit list.  All joint exhibits will be pre-marked JX1-JX50; all of the plaintiff's exhibits will be pre-marked with numbers 51-100; all of defendant's exhibits will be pre-marked with numbers 101-200.

2.    Each and every page of each and every exhibit shall be individually Bates-stamped for identification purposes, and paginated with decimals and arabic numerals in seriatim; i.e., 1.1, 1.2, 1.3 . . ..

3.    Following such conference, each counsel shall have possession of four (4) complete, legible sets of exhibits, for use as follows:

a.    Two (2) sets to be delivered to the Courtroom Deputy Clerk, Alice Timken, no later than 4:00 p.m. on April 18, 2008, an original for the court and one for the witness.

b.    One (1) set to be delivered to counsel for the opposing party and one (1) set to be available for counsel's own use.

4.    Counsel are to confer to make the following determination as to each of the exhibits proposed to be introduced into evidence and prepare separate indexes, one listing joint exhibits, one listing each party's exhibits:

a.    Joint exhibits, i.e., any document which both sides desire to introduce into evidence, will be marked as a joint exhibit (JX), and numbered JX1-___.  Joint exhibits shall

be listed as such in the exhibit list in a column that notes they
are admitted into evidence without further foundation;

b.   As to any exhibit, not a joint exhibit, to which
there is no objection to its introduction into evidence, the
exhibit will be marked as Plaintiff's Exhibit ___, or Defendant's
Exhibit ___ in evidence, and will be listed in the exhibit list
as the exhibit of the offering party;

c.   The exhibit list shall include columns for noting
objections to exhibits.  The first column will list any
objections as to foundation; i.e., Plaintiff's Foundation 2 -
"not authenticated."

d.   The exhibit list shall include a second column for
noting substantive objections to exhibits based on any other
grounds; i.e., "hearsay, improper opinion, irrelevant."

e.   The exhibit list shall include a description of
each exhibit on the left-hand side of the page, and the three
columns outlined above (as shown in the example below).

                          List of Exhibits

|            |             | Admitted    | Objection    | Other      |
|------------|-------------|-------------|--------------|------------|
| Exhibit #  | Description | In Evidence | To Foundation| Objection  |



f.   The completed exhibit list shall be delivered to
the Courtroom Deputy Clerk on or before April 18, 2008, at 4:00
p.m., P.S.T.

g.   If originals of exhibits cannot be located, copies
may be used, however, the copies must be legible and accurate.
If any document is offered into evidence that is partially not

                              17

1  legible, the Court sua sponte will exclude it from evidence.

2  C.   Discovery Documents.

3       1.   Counsel shall file a list of discovery documents with
4  the Courtroom Deputy Clerk at the same time and date as the
5  witness and exhibit lists are lodged with the Courtroom Deputy
6  Clerk, unless the discovery documents are marked as exhibits,
7  which counsel intend to use at trial by designating by number,
8  the specific interrogatory, request for admission, or other
9  discovery document.  Counsel shall comply with the directions of
10 subsection XII (above) for introduction of the discovery document
11 into evidence.

12 D.   Motions In Limine.

13      1.   The motions in limine shall be filed by March 31, 2008,
14 and any responses shall be filed by April 11, 2008.  The Court
15 will conduct a hearing on motions in limine in this matter on
16 April 18, 2008, at 12:15 p.m. in Courtroom 3, Seventh Floor,
17 before the Honorable Oliver W. Wanger United States District
18 Judge, at which time all evidentiary objections, to the extent
19 possible, will be ruled upon, and all other matters pertaining to
20 the conduct of the trial will be settled.

21 E.   Trial Documents.

22      1.   Exhibits To Be Used With Witness.  During the trial of
23 the case, it will be the obligation of counsel to provide
24 opposing counsel not less than forty-eight hours before the
25 witness is called to the witness stand, the name of the witness
26 who will be called to testify and to identify to the Court and
27 opposing counsel any exhibit which is to be introduced into
28 evidence through such witness that has not previously been

18

admitted by stipulation or court order or otherwise ruled upon,
and to identify all exhibits and other material that will be
referred to in questioning of each witness.  If evidentiary
problems are anticipated, the parties must notify the court at
least twenty-four hours before the evidence will be presented.

F.   Counsel's Duty To Aid Court In Jury Voir Dire.

1.   Counsel shall submit proposed voir dire questions, if
any, to the Courtroom Deputy Clerk at atimken@caed.uscourts.gov
on or before April 18, 2008, at 4:00 p.m.  Counsel shall also
prepare a joint "statement of the case" which shall be a neutral
statement, describing the claims and defenses for prospective
jurors, to be used in voir dire.

2.   In order to aid the court in the proper voir dire
examination of the prospective jurors, counsel are directed to
lodge with the Court the day before trial a list of the
prospective witnesses they expect to call if different from the
list of witnesses contained in the Pre-Trial Order of the Court.
Such list shall not only contain the names of the witnesses, but
their business or home address to the extent known.  This does
not excuse any failure to list all witnesses in the Pre-Trial
Order.

3.   Counsel shall jointly submit, to the Courtroom Deputy
Clerk, the day before trial, a neutral statement of the claims
and defenses of the parties for use by the court in voir dire.

G.   Counsel's Duty To Prepare And Submit Jury Instructions.

1.   All proposed jury instructions shall be filed and
served on or before April 18, 2008, by 4:00 p.m.  Jury
instructions shall be submitted in the following format.

1    2.   Proposed jury instructions, including verdict forms,

2  shall be submitted via e-mail to dpell@caed.uscourts.gov

3  formatted in WordPerfect for Windows 10.  Counsel shall be

4  informed on all legal issues involved in the case.

5    3.   The parties are required to jointly submit one set of

6  agreed upon jury instructions.  To accomplish this, the parties

7  shall serve their proposed instructions upon the other fourteen

8  days prior to trial.  The parties shall then meet, confer, and

9  submit to the Court the Friday before the trial is to commence,

10  one complete set of agreed-upon jury instructions.

11    4.   If the parties cannot agree upon any instruction, they

12  shall submit a supplemental set of instructions designated as not

13  agreed upon by April 18, 2008, at 4:00 p.m.

14    5.   Each party shall file with the jury instructions any

15  objection to non-agreed upon instructions proposed by any other

16  party.  All objections shall be in writing and shall set forth

17  the proposed instruction objected to in its entirety.  The

18  objection should specifically set forth the objectionable matter

19  in the proposed instruction and shall include a citation to legal

20  authority explaining the grounds for the objection and why the

21  instruction is improper.  A concise statement of argument

22  concerning the instruction may be included.  Where applicable,

23  the objecting party shall submit an alternative proposed

24  instruction covering the subject or issue of law.

25    6.   Format.  The parties shall submit one copy of each

26  instruction.  The copy shall indicate the party submitting the

27  instruction, the number of the proposed instruction in sequence,

28  a brief title for the instruction describing the subject matter,

the test of the instruction, the legal authority supporting the instruction, and a legend in the lower lefthand corner of the instruction: "Given," "Given As Modified," "Withdrawn" and "Refused" showing the Court's action with regard to each instruction and an initial line for the judge's initial in the lower right-hand corner of the instruction.  Ninth Circuit Model Jury Instructions should be used where the subject of the instruction is covered by a model instruction.

7.   All instruction should be short, concise, understandable, and neutral statements of the law.  Argumentative or formula instructions will not be given, and should not be submitted.

8.   Parties shall, by italics or underlining, designate any modifications of instructions from statutory authority, or any pattern instruction such as the Model Circuit Jury Instructions or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

9.   Proposed verdict forms shall be jointly submitted or if the verdict forms are unagreed upon, each party shall submit a proposed verdict form.  Verdict forms shall be submitted to the Courtroom Deputy Clerk on the first day of the trial.

10.   Failure to comply with these rules concerning the preparation and submission of instructions and verdict forms may subject the non-complying party and/or its attorneys to sanctions.

///

///

21

## XV.   USE OF LAPTOP COMPUTERS/POWERPOINT FOR
## PRESENTATION OF EVIDENCE

1.   If counsel intends to use a laptop computer for presentation of evidence, they shall <u>contact Alice Timken, Courtroom Deputy Clerk, at least one week prior to trial</u>.  The Courtroom Deputy Clerk will arrange a time for any attorney to bring any laptop to be presented to someone from the Court's Information Technology Department, who will provide brief training on how the parties' electronic equipment interacts with the court's audio/visual equipment.  If counsel intend to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

2.   ALL ISSUES CONCERNING AUDIO-VISUAL MATERIALS AND COMPUTER INTERFACE WITH THE COURT'S INFORMATION TECHNOLOGY SHALL BE REFERRED TO THE COURTROOM DEPUTY CLERK.

## XVI.   FURTHER DISCOVERY OR MOTIONS

1.   Plaintiff seeks to subpoena records of other incidents concerning Sergeant Manfredi.

2.   Defendants do not contemplate bringing any pretrial motions, other than identified motions in limine.

## XVII.   SETTLEMENT

1.   None.

## XVIII.   SEPARATE TRIAL OF ISSUES

1.   Defendants request a separate trial as to a punitive damages award should the jury find that Plaintiff is, in fact, entitled to punitive damages.  Since the City of Fresno has been dismissed there is no need to bifurcate any *Monell* claim.

2.   Plaintiff does not want a separate trial.

22

1    3.   The Court will phase the issue of the amount of

2 punitive damages, if any.  That issue will be tried in a second

3 phase in a continuous trial before the same jury.

4         **XIX.   IMPARTIAL EXPERTS, LIMITATIONS OF EXPERTS**

5    1.   None.

6              **XX.   ATTORNEYS' FEES**

7    1.   Defendants seek attorney's fees if they prevail.

8              **XXI.   ESTIMATE OF TRIAL TIME**

9    1.   4 days.

10             **XXII.   TRIAL DATE**

11    1.   April 22, 2008, 9:00 a.m., Courtroom 3, Seventh Floor.

12    **XXIII.   NUMBER OF JURORS AND PEREMPTORY CHALLENGES**

13    1.   There will be an eight person jury.  Each side shall

14 have four peremptory challenges.

15        **XXIV.   AMENDMENT OF FINAL PRETRIAL ORDER**

16    1.   The Final Pretrial Order shall be reviewed by the

17 parties and any corrections, additions, and deletions shall be

18 drawn to the attention of the Court immediately.  Otherwise, the

19 Final Pretrial Order may only be amended or modified to prevent

20 manifest injustice pursuant to the provisions of Fed. R. Civ. P.

21 16(e).

22             **XXV.   MISCELLANEOUS**

23    1.   None.

24

25 IT IS SO ORDERED.

26 **Dated:    March 18, 2008**              **/s/ Oliver W. Wanger**
                                     UNITED STATES DISTRICT JUDGE

27

28

23